**In re: ESTATE OF VICTOR L. JANOSKY, Deceased.**

**Appeal of: James Janosky.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 2002.
Filed June 16, 2003.

John R. Carfley, Philipsburg, for appellant.

William A. Shaw, Clearfield, for appellees.

Before: HUDOCK, ORIE MELVIN and MONTEMURO *, JJ.

HUDOCK, J.

¶ 1 This is an appeal from the judgment entered following the denial of the petition to admit to probate a copy of the Last Will and Testament of Victor Janosky, dated February 21, 1992, which named his brother, James Janosky (Appellant), as sole beneficiary of the estate. For the reasons that follow, we affirm.

¶ 2 On February 21, 1992, Victor Janosky executed a Last Will and Testament in the office of his attorney, Donald E. Lee, Esquire, in State College, Pennsylvania. In the Last Will and Testament, Victor left his entire estate to Appellant. The will further provided that in the event Appellant predeceased Victor, their brothers Thomas and John would receive the estate as co-beneficiaries. Victor died approxi-

mately nine years later on. January 22, 2001, survived by his three brothers, Appellant, Thomas and John.[1] Following his death, Appellant, Thomas and Thomas' wife, Rosie, went to Victor's home and located in a filing cabinet two photocopies of the executed 1992 will in the original will envelope. The original will document, however, was never located.

¶ 3 On March 7, 2001, Appellant filed a petition to admit a copy of the original will to probate. Thomas and Helen (on behalf of her deceased husband) (Appellees) opposed the petition. Hearings were held on April 9, 2001, May 29, 2001, and November 1, 2001. On December 12, 2001, the court entered an "Opinion and Order" denying the petition. The court, in reaching its decision, reasoned that the decedent retained custody and possession of his original will and, as such, at his death, when the original document could not be found, it was presumed by law to have been revoked or destroyed. The court further found that Appellant did not provide sufficient evidence to rebut the presumption of destruction and support his theory that the original had merely been lost or misplaced. On December 21, 2001, Appellant filed a motion for post-trial relief. While the post-trial motion was pending, Appellant presented a motion for reconsideration, which the court granted, and thereafter scheduled argument for January 28, 2002. Following oral argument and by order dated March 11, 2002 (filed March 14, 2002), Appellant's motion for post-trial relief was dismissed by the court. Subsequently, Appellant filed another petition for reconsideration, this time requesting the court to schedule a hearing in order that he may present the testimony of four additional

---

* Retired Justice assigned to the Superior Court.

1. On February 17, 2001, John Janosky died, leaving to survive him his wife, Helen Elizabeth Janosky, and two children, Richard Janosky and Linda Benedek.

witnesses. The court denied the petition on April 3, 2002. On April 11, 2002, the order of the court denying probate of the February 21, 1992, Last Will and Testament of the decedent was reduced to judgment. This timely appeal followed.

¶ 4 On appeal, Appellant presents the following issues for our consideration:

I. WHETHER THE COURT ERRED AS A MATTER OF LAW BY REFUSING TO ALLOW [APPELLANT] THE OPPORTUNITY TO CALL PARTIES TO THE SUIT AS WITNESSES BASED ON THE DEAD MAN'S RULE?

II. WHETHER THE COURT AS A MATTER OF LAW MISAPPLIED THE PROVISIONS OF THE DEAD MAN'S RULE?

III. WHETHER THE COURT AS A MATTER OF LAW ESTABLISHED A CONCLUSIVE PRESUMPTION WITH RESPECT TO THE DESTRUCTION OF A MISSING WILL, WHEN THE RULE OF LAW LOOKS TO THE ESTABLISHMENT OF A REBUTTABLE PRESUMPTION IN THOSE CIRCUMSTANCES?

IV. WHETHER THE COURT AS A MATTER OF LAW FAILED TO CONSIDER SUBSTANTIAL CIRCUMSTANTIAL EVIDENCE OF TESTAMENTARY INTENT BY THE TESTATOR SO AS TO REBUT THE PRESUMPTION OF THE DESTRUCTION OF THE WILL?

V. WHETHER THE COURT ERRED AS A MATTER OF LAW BY FAILING TO ADDRESS THE ISSUE AS A MATTER INVOLVING A LOST WILL AS OPPOSED TO A DESTROYED WILL BASED ON THE SUBSTANTIAL TESTIMONY PRESENTED BY [APPELLANT] AND THE PAUCITY OF EVIDENCE ADMITTED BY APPELLEES IN SUPPORT OF THEIR POSITION ON THE DESTRUCTION OF THE WILL?

VI. WHETHER THE COURT ERRED AS A MATTER OF LAW IN FAILING TO ALLOW [APPELLANT] THE OPPORTUNITY TO PRESENT TESTIMONY ON RECONSIDERATION PERTINENT TO THE ISSUE OF THE INTENT OF THE TESTATOR AT OR ABOUT THE TIME OF HIS DEATH?

VII. WHETHER BASED ON THE FACTS AND CIRCUMSTANCES OF THIS CASE THE COURT ERRED BY NOT FINDING AS A MATTER OF LAW THAT THE DECEDENT'S TESTAMENTARY INTENT, AS EXPRESSED IN HIS DUPLICATE ORIGINAL WILL, SHOULD HAVE BEEN GIVEN PRIORITY AS OPPOSED TO DESTROYING THAT INTENT BASED UPON THE UNFOUNDED THEORY THAT THE LAST WILL AND TESTAMENT WAS DESTROYED?

Appellant's Brief at 3–4.

 ¶ 5 Appellant, in issues I and II, argues that the court erred in refusing to allow him the opportunity to testify to the relationship between the decedent and himself and the lack of a relationship between the decedent and his brothers Thomas and John and their families, based

on the Dead Man's Act.[2] Specifically, Appellant asserts that this testimony should have been admissible pursuant to the *devisavit vel non* exception to the Act.[3] Appellant further contends that the court similarly erred by not permitting him "to call his surviving brother and his sister-in-law as witnesses on cross-examination." Appellant's Brief at 10. He posits that by calling his brother and sister-in-law on cross-examination, he waived the protections of the Dead Man's Act and, as such, he should have been permitted to examine them regarding matters occurring during the decedent's lifetime. Thus, he concludes that his testimony and the testimony of his brother and sister-in-law, which "could have potentially provided insight into the relationship between the parties and the decedent and his true intentions regarding his estate[,]" was improperly precluded by the trial court. *Id.* Appellees, however, argue that Appellant has waived these issues as a result of his failure to include them in his post-trial motions.

¶ 6 This Court has recently addressed whether post-trial motions are necessary following a final order in orphans' court proceedings to preserve an issue for review. *See In Re: Estate of Rosser,* 821 A.2d 615 (Pa.Super.2003). In determining that post-trial motions were not required, we stated:

Pa.R.C.P. 227.1 provides that a party shall file post-trial motions within ten days after:

(1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

(2) notice of nonsuit or the filing of the decision or adjudication in the case of a trial without jury or equity trial.

Pa.R.C.P. 227.1(c). The Rule further provides that grounds which are not raised in the post-trial motions shall be deemed waived on appellate review. Pa.R.C.P. 227.1(b)(2). While Rule 227.1 has been held applicable in both civil and equity actions, *see Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002), it does not apply to the within matter. Rather, Pa.O.C.R. 7.1 governs the procedure for challenging the entry of a final order, decree or adjudication in orphans' court proceedings. Pa.O.C.R. 7.1 provides in relevant part as follows:

(a) **General Rule.** Except as provided in Subdivision (e) [ (Adoptions and Involuntary Terminations) ], no later than twenty (20) days after entry of an order, decree or adjudication, a party may file exceptions to any order, decree or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) or Pa.R.A.P. 342 following disposition of the exceptions. If exceptions are filed, no appeal shall be filed until the disposition of exceptions except as provided in Subdivision (d) (Multiple Aggrieved Parties). Failure to file exceptions shall not result in waiver if the grounds for appeal are otherwise properly preserved.

---

**2.** 42 Pa.C.S.A. § 5930.

**3.** The *devisavit vel non* exception provides that "witnesses are competent to testify in disputes arising over the passage of property, through will or intestacy, although their testimony might otherwise be rendered incompetent through operation of the general rule." *In re Estate of Gadiparthi,* 158 Pa.Cmwlth.

537, 632 A.2d 942, 946 (1993) (citing *In re Estate of McClain,* 481 Pa. 435, 392 A.2d 1371 (1978)). "This exception applies to disputes involving the transfer of a decedent's estate both by operation of law or by will and renders competent all witnesses claiming decedent's property by reason of [his] death." *Id.*

(b) **Waiver.** Exceptions may not be sustained unless the grounds are specified in the exceptions and were raised by petition, motion, answer, claim, objection, offer of proof or other appropriate method.

\* \* \*

(g) **Exceptions.** Exceptions shall be the exclusive procedure for review by the Orphans' Court of a final order, decree or adjudication. A party may not file a motion for reconsideration of a final order.

Pa.O.C.R. 7.1(a), (b), (g).

*In Re: Estate of Rosser,* 821 A.2d at 619. Thus, because Appellant was not required to file post-trial motions or exceptions to the court's determination, we find that his claims on appeal are not precluded on this basis. However, while counsel for Appellant objected to exclusion of the evidence arguing that the testimony was not prohibited by the Dead Man's Act, his argument was framed in terms of relevancy of the evidence. At no time prior to the filing of this appeal did Appellant raise the *devisavit vel non* exception. Accordingly, we find this argument has not properly been preserved for our review. *Id.* at 619. *See also Boring v. Conemaugh Memorial Hospital,* 760 A.2d 860, 861 (Pa.Super.2000), *appeal denied,* 566 Pa. 632, 781 A.2d 137 (2001) (providing that appellant may not argue a new and different ground on appeal that was not properly raised in the trial court).

■ ¶ 7 Nonetheless, we note that even if we determined that the exception applied, we would find that this error does not mandate a new hearing, as the proffered testimony would have merely repeated other evidence that was admitted during the proceedings. During his direct testimony at the April 9, 2001, hearing, Appellant testified to his close relationship with the decedent and the lack of a relationship between the decedent and their brothers, Thomas and John. Specifically, Appellant testified that decedent had lived with him for a period of nine years at his home in Kylerstown before decedent bought and moved into a home in Clearfield on October 31, 2000. During the time that Appellant and decedent resided together, the decedent executed the February 1992 will naming Appellant as his sole beneficiary. Appellant testified that the decedent had told him what was in the will and had asked him to execute a reciprocal will, which he did. On June 2, 1998, the decedent had executed a power of attorney naming Appellant as his attorney-in-fact. Appellant explained that the decedent was terminated from his position with Penn State University due to his alcoholism. Appellant also described how the alcoholism caused behavioral problems and alienation between the decedent, Appellees and their families. He stated: "[the decedent] had very little acknowledgement to anyone, and that was brought on because he was an alcoholic. And that presented a behavioral problem. So [Appellees] didn't visit him, and he didn't visit them." N.T., 4/9/01, at 31. Appellant further explained that after the decedent had moved to his own home in Clearfield, they communicated or saw one another on a daily basis and that, during the summer of 2001, Appellant had planned to sell his home and move to Clearfield to live with the decedent. He testified that he had a key to the residence and that he was the one who had found the decedent dead at his home after not answering the phone for an entire day. Testimony further revealed that Appellees had never visited the decedent at his new home.

¶ 8 Additionally, Appellant offered testimony that suggested the closeness of his relationship with the decedent. He offered testimony that decedent had named

him as sole beneficiary to two life insurance policies and to two IRA accounts, one such designation being made just two months before his death. Moreover, at the hearings, testimony was presented by Donald Lee, Esquire, and Ronald Collins, Esquire, that while retained by the decedent on various matters, Appellant, unlike Appellees, would accompany the decedent to their offices. Likewise, Elizabeth Nelson, the realtor employed by the decedent to find his home in Clearfield, testified that the decedent and Appellant appeared to have a close relationship, as Appellant often accompanied the decedent when looking at perspective homes and "[the decedent] seemed to want all of [Appellant's] input." N.T., 11/1/01, at 18. She stated that, "They discussed everything. Sometimes [the decedent] got a little frustrated. [Appellant] would help keep him under control, keep him calm so he could make some rational decisions." *Id.* She testified that she was not even aware that the decedent had any other brothers.

¶ 9 Joseph E. Zelenky and John Petkac, long-time acquaintances of the Janosky family, also testified to the brothers' relationships. They described Appellant and the decedent as having a "good relationship" and that, over the ten years prior to decedent's death, they often saw Appellant and the decedent shopping, at church or at other activities in the community together, but never saw the decedent with Appellees. Any further testimony regarding the relationship of the decedent with Appellant and Appellees, therefore, would have been cumulative. Consequently, any error in precluding such testimony pursuant to the Dead Man's Act could not be prejudicial to Appellant and, as such, would not require a new hearing. *See Goldmas v. Acme Markets, Inc.,* 393 Pa.Super. 245, 574 A.2d 100, 104–105 (1990) (finding that store was not prejudiced by exclusion of its proffered letter by physician about treatment of cus-

tomer's glaucoma while customer was hospitalized after slip and fall; letter was cumulative to other testimony indicating that customer was suffering from glaucoma at time of fall); *Kremer v. Janet Fleisher Gallery, Inc.,* 320 Pa.Super. 384, 467 A.2d 377, 380 (1983) (holding that where testimony of artist as to her opinion of the value of her paintings was cumulative to other evidence presented at trial, trial court's erroneous ruling precluding artist's testimony did not mandate a new trial). *See also Kersey v. Jefferson,* 791 A.2d 419, 425 (Pa.Super.2002) (providing "To constitute reversible error, an evidentiary ruling must not only be erroneous, but [must] also [be] harmful or prejudicial to the complaining party").

¶ 10 We further note that, to the extent that Appellant argues that the court erred by not allowing him the chance to call Appellees as witnesses on cross-examination on the basis of his waiver of the Dead Man's Act, we find that Appellant is entitled to no relief. While Appellant has correctly recited case authority providing "that a representative of the estate may elect to waive the Dead Man's Statute disqualification of an adverse party from testifying as to conversations with the deceased, by taking deposition, or requesting response to written interrogatories, or by cross-examining the adverse party as to matters occurring during the decedent's lifetime," Appellant in this instance did not receive letters testamentary and, as such, was not a representative of the estate necessary to invoke the provisions of this rule. Appellant's Brief at 10 (citing *Olson v. North American Industrial Supply, Inc.,* 441 Pa.Super. 598, 658 A.2d 358 (1995); *Flagship First National Bank of Miami Beach v. Bloom,* 288 Pa.Super. 347, 431 A.2d 1082 (1981)).

¶ 11 Because each of Appellant's issues, III, V and VII, challenge the court's findings regarding decedent's possession and destruction of his will, for ease of discussion we will address them together. Appellant in issue III argues that "the court as a matter of law established a conclusive presumption with respect to the destruction of a missing will, when the rule of law looks to the establishment of a rebuttable presumption in those circumstances." *See* Appellant's Brief at 11 (emphasis deleted). Appellant contends that the court, through the exclusion of testimony and its failure to consider extensive evidence to the contrary, determined that the decedent destroyed his original will. Appellant further alleges that "virtually no evidence has been forwarded by [Appellees] to suggest that the original will was not misplaced and that the photocopies of the will do not set forth the decedent's true testamentary intent." Appellant's Brief at 12. Thus, Appellant concludes that the court's "failure to evaluate the significance of such factors pushed the rebuttable presumption to that of a conclusive presumption, unable to be overcome regardless of the evidence provided by Appellant." *Id.* In issues IV, V, and VII, Appellant challenges the court's determination that the decedent had actual possession of the original will, necessary to invoke the presumption of destruction. He contends that because there was no conclusive evidence presented that the decedent had possession of the original will, the court erred in applying the presumption. Thus, Appellant concludes that, in the absence of any such evidence and because there was no evidence presented, the decedent had revoked his will pursuant to the mandates of 20 Pa.C.S.A. section 2505,[4] the February 1992 will remains valid, and a copy should have been accepted for probate. In the alternative, Appellant argues that even if the decedent had possession of his original will, sufficient evidence was presented to rebut the presumption that decedent destroyed his will and intended to split his estate evenly among his three surviving siblings.

¶ 12 Our Supreme Court has repeatedly held that "where a [testator] retains the custody and possession of [his] will and, after [his] death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by the [testator]." *In re Estate of Murray*, 404 Pa. 120, 129, 171 A.2d 171, 176 (1961). *See also In re Estate of McCaffrey*, 453 Pa. 416, 418 n. 3, 309 A.2d 539, 540 n. 3 (1973) (same). "To overcome that presumption, the evidence must be positive, clear and satisfactory." *In re Estate of Murray*, 404 Pa. at 129, 171 A.2d at 176. Moreover, to prevail over the presumption and establish the existence of a lost will, "the proponent of the copy of the will must prove that: 1) the testator duly and properly executed the original will; 2) the contents of the will were substantially as appears on the copy

4. Section 2505, entitled "Revocation of a will", provides as follows:

No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than:
(1) **Will or codicil.** By some other will or codicil in writing;
(2) **Other writing.** By some other writing declaring the same, executed and proved in the manner required of wills; or
(3) **Act to the document.** By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses.

of the will presented for probate; and 3) when the testator died, the will remained undestroyed or revoked by him." *Burns v. Kabboul,* 407 Pa.Super. 289, 595 A.2d 1153, 1167–68 (1991).

¶ 13 In accord with the above, we must first determine whether the decedent had actual possession of his original will necessary to invoke the presumption. At the May 29, 2001, hearing, Attorney Lee testified regarding his meetings with the decedent in the preparation and execution of the will. When questioned regarding his knowledge of the whereabouts of the original will, Attorney Lee stated the following:

Q. Did you have any present recollection of what happened to the original in 1992 with regard to that original will? Do you presently have any actual personal recollection about what happened to that will?

A. Based on the fact that we have a photostatic copy in our file, a signed copy, and that a will search of our vault where we keep clients' wills if requested to do so and the fact that there was no notation on the file that the will was being kept by us, I believe it was delivered to the client.

THE COURT: I'm sorry?

THE WITNESS: I believe it was delivered to the client, [the decedent].

BY [APPELLANT'S ATTORNEY]:

Q. And that's not based upon your actual recollection, but that's based upon your usual procedure?

A. That's correct.

Q. And can you account for the fact that there were two photostatic copies of the original showing signatures and all in that envelope? Is there any recollection that you have or usual practice you have with regard to two photocopies?

A. My practice is to ask the client if they would like to have photocopies of the signed document for the reason that many people keep the original in a bank safe deposit box or other place, and they like to keep a copy at home for ready reference. So I generally ask them if they would like copies, and I give them as many copies as they ask for, plus keep one for our file. So if there were two in this will packet, he must have asked for two.

\* \* \*

Q. Okay. And for the record, after [the decedent] executed this will in your office, it would be your testimony that you turned the original will over to [the decedent]?

A. That's correct.

Q. And since you turned the original over to him, he hasn't contacted you regarding his will being lost?

A. [The decedent]?

Q. Correct.

A. No, sir, he did not.

N.T., 5/29/01, at 12–13, 14–15. Attorney Lee further explained that the will envelope that was found at the decedent's home which contained the two photocopies of the will was the original will envelope in which his office places the original will. *Id.* at 8. Based on this testimony, we share the view of the Orphans' Court that sufficient evidence was provided to find that the decedent had actual custody, possession and control of the original will.

¶ 14 Having found that the decedent had custody of the will, we must next consider whether sufficient evidence was presented that the will was lost, rebutting the presumption that the decedent destroyed it. As stated above, to prove the existence of a lost will and to overcome the presumption of destruction, Appellant must prove

that the decedent properly executed the will, that the contents of the will are substantially as they appear in the copy offered for probate and, at the time of the decedent's death, the will remained undestroyed or revoked. *Burns, supra.* *See also In re Estate of Mammana,* 388 Pa.Super. 12, 564 A.2d 978, 980 (1989) (providing, "[w]hen a will is known to have been executed by the decedent and cannot be located after her death and no other will is found, the lost instrument can be probated if: (1) the presumption that the testator revoked the lost instrument is rebutted; and (2) proof is given of both the execution and of the contents of the missing document").

¶ 15 The instant record clearly establishes that the decedent duly and properly executed his will on February 21, 1992, in the presence of Attorney Lee, his secretary and a person who worked in the adjoining office to Attorney Lee, and that the contents of the will were as set forth in the copy of the will submitted for probate. This was proven through the testimony of Attorney Lee, who testified to signing the decedent's February 1992 will as a witness and that the copy of the will offered for probate was a true and correct copy of the final will that he had prepared on behalf of the decedent. Further on the question of execution of the will by decedent, Attorney Lee stated that the decedent signed in his presence, and he verified that the signature on the will was that of the decedent. The difficulty arises, however, in proving the status of that will when the decedent died. While the record is replete with testimony regarding the decedent's close relationship with Appellant and lack of any relationship with Appellees, we are constrained to find that this evidence in and of itself is insufficient to rebut the presumption of destruction. "Declarations of intent, condition, and circumstances of family are insufficient to establish [whether a will remains undestroyed or unrevoked by

a decedent] and thus rebut the existent legal presumption." *In re Estate of Keiser,* 385 Pa.Super. 24, 560 A.2d 148, 150 (1989) (citing *Gardner v. Gardner, et al.,* 177 Pa. 218, 35 A. 558 (1896)). "Accordingly, a court will not weigh the probability of the decedent's wishes or otherwise speculate as to the motives which may or may not have influenced the [testator] in the direction of intestacy." *Id.* (citing *O'Neill's Estate,* 58 Pa.D. & C. 351 (1946)). When questioned whether he had any evidence other than the relationships of the parties to substantiate his claim regarding whether the will had been lost or destroyed by someone other than the decedent, Appellant responded that he had none. Accordingly, we cannot find that the Orphans' Court erred in finding that the evidence did not clearly and satisfactorily rebut the presumption needed for the will to have been admitted to probate or that the court applied a conclusive presumption that could not be rebutted.

¶ 16 In issue VI Appellant asserts that the court erred as a matter of law in failing to allow him the opportunity to present testimony on reconsideration pertinent to the issue of the intent of the testator at or about the time of his death. Specifically, Appellant alleges in his petition for reconsideration that he would present four additional witnesses, a neighbor of the decedent, two neighbors of Appellant and a contractor who performed renovations for the decedent in his Clearfield home, who would testify to "the decedent's involvement with [Appellant] and also reflect upon the plans of the decedent insofar as his future interaction with [Appellant]." Petition for Reconsideration, 4/5/02, at ¶ 5. Appellant argues that the testimony of these witnesses would be "substantial evidence of [the decedent's] love and affection for [Appellant] and would be strong evidence to rebut the objectant's argument that decedent took the opportunity while living alone to dis-

pose of his will and thus modify his testamentary dispositive scheme." *Id.* at ¶ 7. Appended to the petition for reconsideration are affidavits of the witnesses as to their proffered testimony.

¶ 17 After reviewing the petition, we find Appellant's argument fails on two bases. First, Appellant raises these allegations in an improper filing pursuant to Pa.O.C.R. 7.1(g), which provides that "[a] party may not file a motion for reconsideration of a final order." Second, as we have discussed above, additional testimony of Appellant's relationship with the decedent is not the type of evidence that serves to rebut the presumption of destruction. *See In re Estate of Keiser, supra.* Accordingly, Appellant's argument in this regard does not merit relief.

¶ 18 Judgment affirmed.