**In re Estate of Ziegler**

C.P. of Bucks County, no. 2005-584-29.

*C. George Milner,* for Mellon Bank.
*William F. Schroeder,* for estate.

FRITSCH JR., *J.,* December 31, 2008—This matter is before us as a result of exceptions filed by Mellon Bank to the adjudication and decree entered by this court on August 20, 2008. The exceptions allege that the adjudication, finding that Mildred S. Zeigler, deceased, revoked or destroyed her will, thereby causing her estate to pass intestate, is contrary to the evidence. For the reasons stated herein, we overrule the exceptions and affirm the initial findings of this court.

## FACTUAL BACKGROUND

Mildred S. Ziegler (decedent) died on January 24, 2005, a resident of Southampton Estates, Upper Southampton Township, Bucks County, Pennsylvania. Dece-

dent was a widow at the time of her death. She never had any children and her parents predeceased her. Decedent's sole intestate heir at the time of her death was her sister, Florence Scheetz Fisher, who survived decedent but who herself died on July 21, 2005, testate. Fisher was survived by her children, Lee F. Gittens and Thomas Fisher who are the co-executors of Fisher's estate.

In 1967, decedent's husband died and decedent moved from Pittsburgh back to the neighborhood in Philadelphia where she grew up, living one street over from her sister Fisher and Fisher's family, including decedent's niece and nephew, Lee and Thomas. Lee and Thomas were in frequent contact with decedent throughout her life.

On July 11, 1969, decedent executed a will at Girard Bank. In 1981, decedent executed a codicil to her 1969 will. In 1984, Mellon Bank acquired Girard Bank and the name of the bank changed soon thereafter. On November 12, 1993, decedent executed another will, superseding the prior will and codicil, in the offices of Mellon Bank, at 1735 Market Street, Philadelphia, Pennsylvania. During her lifetime, decedent also established, funded, and amended from time to time certain trusts, ending with a "second amended trust" which, upon decedent's death, left the bulk of her estate to All Saints Episcopal Church after providing for certain specific bequests. On November 12, 1993, decedent executed three original documents of the second amendment to trust but only one original will, as evidenced by the testimony and notary logs of Wendy Smith, a former Mellon Bank employee and a notary public. Wendy Smith testified that on November 12, 1993, she notarized three trust documents, *i.e.,* three second amendment to trust documents,

but only one original will. We recognize that it is customary to execute multiple originals of trust documents, but only one original will.

On February 4, 1994, Patrice T. Irwin, an administrative assistant in Mellon Bank's trust department, wrote to decedent at decedent's then-current address. The letter read in full as follows: "Enclosed is a completely signed original document of the second amendment to your trust and an original of your will. These are for your personal records." The letter also indicated that it was accompanied by an enclosure.

Patrice T. Irwin customarily sent out trust documents, which normally consisted of multiple signed originals. Since she was a trust department employee, and not an estate department employee, she was not familiar with mailing wills.

In January 1998, decedent moved from Philadelphia to Southampton Estates, a retirement community in Bucks County. Decedent's sister, Fisher, moved to another unit in the same retirement community in July 1998. In 2001, decedent moved from independent living to assisted living within the Southampton Estates facility.

In 2001 or 2002, Christine Embery Waltz, Esquire, an attorney since 1989, first came into contact with decedent. A social worker at Southampton Estates asked Ms. Waltz to meet decedent and discuss becoming her attorney-in-fact. On May 29, 2002, decedent executed a power of attorney appointing Ms. Waltz as her attorney-in-fact. During the time Ms. Waltz acted as decedent's attorney, she helped decedent get her bank accounts in order, communicated with Mellon Bank regarding any

bills that needed to be paid from decedent's lifetime trust, paid small bills and prepared decedent's income tax returns.

In 2002, decedent moved from assisted living to skilled nursing within the Southampton Estates facility. At this time, her apartment needed to be cleaned out because her new living space was much smaller. Ms. Waltz and Lee went through decedent's paperwork and records, Lee taking personal and family items, and Ms. Waltz taking anything of a legal or financial nature. Lee found among the decedent's records dealing with her 1998 move to Southampton Estates a note in decedent's handwriting making reference to Mellon Bank and the "2 amendment to trust." Ms. Waltz filled two tin cans with old financial records and other paperwork and took them to her house for safekeeping and to review at a later time as the need arose. Neither Ms. Waltz nor Lee found an original will among decedent's records.

Decedent died on January 24, 2005. Following decedent's death, Ms. Waltz went through the documents and paperwork contained in the tin cans she had taken from decedent's residence for approximately two hours. Among the items Ms. Waltz found were: an original second amendment to trust, a conformed copy of the 1993 will, and the original February 4, 1994 letter from Patrice T. Irwin to decedent referencing the enclosure of "an original of your will." These documents were in a manila envelope inside one of the tin cans.

The conformed copy of the 1993 will was on high quality bond paper, had the word "copy" written on the cover page, and had original signatures of the decedent

and witnesses preceded by the symbol /s/. In addition, it had handwritten notations such as question marks. The conformed copy was not notarized. The second amendment to the trust was on high quality bond paper, had the signature of the decedent and the witnesses, and was notarized. It also had handwritten notations such as question marks. Ms. Waltz also found various little notes among the paperwork in the tin cans. One of the little notes Ms. Waltz found provided, in decedent's handwriting: "will and trust agreement." "Who has originals?" and the abbreviation of the word, "answer, Girard Bank." The note was undated. Ms. Waltz did not find the original 1993 will among the documents contained in the tin cans.

Soon after decedent's death, on January 28, 2005, Mellon Bank caused a will file assignment sheet to be created. The will file assignment sheet indicated that Mellon Bank only had a copy of the 1993 will even though it had the original 1969 will and the original 1981 codicil. In the normal course of business, if Mellon Bank had been holding the original 1993 will, it would have been included along with the will file assignment sheet when the estate was assigned to the employee in charge of administering it.

In the case of decedent's estate, its administration was first assigned to employee Michael O'Neill, a 23-plus year employee of Mellon Bank. Because Mellon Bank could not find the original 1993 will and was planning to probate a photocopy of the same, the administration of decedent's estate was reassigned to Edwin Rouh, the employee in charge of the department, sometime in February of 2005.

We found that Mellon Bank did not lose the decedent's 1993 will. Mellon Bank considers the protection of original wills entrusted to it by its clients to be an important responsibility. Mellon Bank keeps original wills in a vault room to which entrance is restricted to few employees by use of a card reader system. Several Mellon Bank employees testified that with respect to the files they have handled, they had never known of an original will to have been lost with the possible exception of decedent's 1993 will. In particular, Mellon Bank employee Scott Small testified that out of approximately 44,000 wills entrusted to him, only very few have ever been lost. Scott Small is Mellon Bank's national director of estate settlement and administration. In addition, another Mellon Bank employee, Michael O'Neill, testified that based upon his own personal knowledge of the estate files he has handled while working at Mellon Bank, he has never known of an original to be lost other than possibly in this case. Michael O'Neill has administered approximately 100 estates. No fire, flood or other catastrophe would have affected documents in Mellon Bank's will vault for the relevant time period.

## PROCEDURAL BACKGROUND

This case was initiated by the filing of a petition to admit to probate a photocopy of an instrument the decedent executed on November 12, 1993, as her last will in the offices of Mellon Bank N.A. Mellon Bank N.A., named co-executor in said 1993 will, filed the petition. Petitioner asserted that following decedent's death, petitioner searched for, but was unable to locate, the original 1993 will in its files. Petitioner further stated

that petitioner contacted George J. Konesky Jr., Esquire, the scrivener of the 1993 will to inquire whether he had the original will in his office, and that Mr. Konesky searched but could not locate the original will in his files. Finally, petitioner contacted decedent's attorney-in-fact at the time of her death, Christine Embery Waltz, Esquire, to inquire whether she had the original 1993 will in her file, and that she could not find the original will among decedent's paperwork.

The estate of Fisher filed a timely answer and new matter in response to the petition, invoking the presumption that arises when a testatrix is known to have been in possession and control of her will and the will cannot be found. Said presumption is that the testatrix revoked or destroyed her original will. Mellon Bank filed a reply to new matter, denying that the 1993 will was ever in decedent's possession and control. According to Mellon Bank, the 1993 will was in its possession and control but was lost.

Deputy Register, James McCullen, conducted a hearing on September 13, 2005, to consider Mellon Bank's petition. On or about October 6, 2005, the register issued an opinion permitting a photocopy of the November 12, 1993 instrument to be admitted to probate. The register found that the evidence was insufficient to determine that decedent ever had possession and control of the original 1993 will. On November 2, 2005, the Register of Wills issued a decree and grant of letters testamentary to Mellon Bank. The estate of Fisher appealed.

Lee and Thomas, executors of the estate of Fisher, deceased, filed a petition for a citation to be issued di-

rected to Mellon Bank to show cause why their appeal from the Register of Wills should not be sustained, the opinion of the Register of Wills permitting the probate of a photocopy of the 1993 will should not be reversed, and, if a copy of the 1993 will had been probated, that such probate be set aside. A de novo hearing on Mellon Bank's petition was held before the undersigned on May 6, 2008.

On August 20, 2008, we entered an adjudication and decree finding that the will was in decedent's possession and therefore is presumed destroyed or revoked. Mellon Bank thereafter filed the present exceptions to the adjudication, alleging that specified findings of fact of this court were contrary to the evidence.

Mellon Bank's exceptions are, verbatim, as follows:

"(1) Findings of fact nos. 20 and 46[1] are contrary to the evidence; that is the notary logs of Wendy Smith indicate that she originally recorded two will notarizations, then crossed one out and substituted the Arabic numeral 'one' therefore; finding no. 46 is contrary to the evidence;

"(2) Findings of fact nos. 20 and 46 are contrary to the weight of the evidence; that is the notary logs of Wendy Smith indicate that she originally recorded two will no-

---

1. FOF no. 20 states: "On November 12, 1993, decedent executed three original documents of the second amended trust but only one original will, as evidenced by the testimony and notary logs of Wendy Smith. Wendy Smith is a former Mellon Bank employee and a notary public."

FOF no. 46 states: "Mellon Bank did not lose the decedent's 1993 will."

tarizations, then crossed one out and substituted the Arabic numeral 'one' therefore; finding no. 46 is contrary to the weight of the evidence;

"(3) Findings of fact nos. 36 and 37[2] reference a testamentary document signed at the end by decedent in her own hand, which provides the identical dispositive scheme and administrative appointments as the will probated by the register as a lost will. Orphans' court procedure requires the court to substitute the document referenced in findings 36 and 37 as the will of decedent, and dismiss the appeal because the existence of a testamentary document signed at the end by the decedent among her post mortem papers is in fact a will representing the decedent's testamentary wishes which the court is obligated to effect; . . . ."

Oral argument on Mellon's exceptions was held before the undersigned on November 25, 2008. In its brief and oral argument, Mellon Bank strayed from the issues raised in its exceptions nos. 1 and 2, concerning how many will documents were executed and notarized. Instead, Mellon Bank focused its arguments on which documents were delivered to decedent with the letter dated February 4, 1994.

---

2. FOF no. 36 states: "Among the items Ms. Waltz found were: an original second amendment to trust, a conformed copy of the 1993 will, and the original February 4, 1994 letter from Patrice Irwin to decedent referencing the enclosure of 'an original of your will.' These documents were in a manila envelope inside one of the tin cans."

FOF no. 37 states: "The conformed copy of the 1993 will was on high quality bond paper, had the word 'copy' written on the cover page, and had original signatures of the decedent and witnesses preceded by the symbol /s/. In addition, it had handwritten notations such as question marks. It was not notarized."

## DISCUSSION

It is well-settled that "where a testator retains the custody and possession of his will and, after his death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by the testator." *In re Estate of Janosky,* 827 A.2d 512, 519 (Pa. Super. 2003). (citations omitted) "To overcome that presumption, the evidence must be positive, clear and satisfactory." *Id.* (citations omitted) "Moreover, to prevail over the presumption and establish the existence of a lost will, the proponent of the copy of the will must prove that: (1) the testator duly and properly executed the original will; (2) the contents of the will were substantially as appears on the copy of the will presented for probate; and (3) when the testator died, the will remained undestroyed or revoked [sic] by him." *Id.* at 519-20. "Declarations of intent, condition, and circumstances of family are insufficient to establish these factors and thus rebut the existent legal presumption." *In re Estate of Keiser,* 385 Pa. Super. 24, 29, 560 A.2d 148, 150 (1989). (citation omitted) "Accordingly, a court will not weigh the probability of the decedent's wishes or otherwise speculate as to the motives which may or may not have influenced the testatrix in the direction of intestacy." *Id.* (citation omitted)

It is undisputed that decedent executed a valid will on November 12, 1993. There is no disagreement that the original of said will could not be found upon her death. The focus of the dispute in this case is whether decedent had custody and possession of her 1993 will subsequent to its execution and prior to her death. If she did, then it

may be presumed that she revoked or destroyed it. If she did not, then the presumption does not arise and we would be required to conclude that the 1993 will was lost.

As stated above, the pivotal question of this litigation has been whether the decedent had possession of her 1993 will. Mellon Bank failed to raise the issue of delivery of the will in its exceptions and therefore the issue is waived. However, assuming arguendo, that this issue is not waived, the evidence clearly supports our finding that decedent had possession and control of the 1993 will, which was mailed to her on February 4, 1994. On said date, Patrice T. Irwin, an administrative assistant in Mellon Bank's trust department mailed the will to decedent at the latter's then current address. The cover letter read in full as follows: "Enclosed is a completely signed original document of the second amendment to your trust and *an original of your will.* These are for your personal records." (emphasis added) The letter also indicated that it was accompanied by an enclosure. (N.T. 5/6/08, pp. 64-66.)

Although Mellon Bank failed to raise the issue in its exceptions, Mellon spent substantial time in both its brief and at oral argument contending that without testimony from Patrice T. Irwin, there is no clear evidence that decedent ever had possession of the 1993 will. The fact that Patrice T. Irwin did not testify as to the wording of her February 4, 1994 letter does not shift the weight of the evidence in favor of Mellon Bank. We determined by a preponderance of the evidence that the original will was sent to decedent on February 4, 1994, under the cover of a letter describing the enclosure as "an original" will.

The fact that the February 4, 1994 letter stated that "an" original had been mailed to the decedent does not undermine a finding that the original and only the original of the 1993 will was mailed to decedent. Patrice T. Irwin mistakenly assumed that there existed more than one counterpart original of the will because she was in the practice of mailing trust documents, which normally consist of multiple signed originals. The decedent, however, only executed one original will on November 12, 1993.

The evidence further established that decedent received the February 4, 1994 letter with its enclosures. Ms. Waltz found the original letter from Patrice T. Irwin to decedent among decedent's paperwork after the latter's death. The only copy of the will found among decedent's papers was the un-notarized, conformed copy, with the word "copy" written on the cover page. (N.T. 5/6/08, pp. 135-38.) The evidence does not support a finding that a document marked "copy" was mailed under the cover of the February 4, 1994 letter.

The note Ms. Waltz found among decedent's documents upon her death, referencing Girard Bank, does not compel a different conclusion. The undated note states: "will and trust agreement." "Who has originals?" and the abbreviation of the word, "answer, Girard Bank." The reference to a will in this note is clearly to the decedent's earlier will of 1969. This conclusion is consistent with the fact that Mellon Bank kept the original of the 1969 will. Moreover, Girard Bank became Mellon Bank in 1984. Decedent was fully aware of this change, as it is evidenced by another note Lee found among decedent's records dealing with her 1998 move. This note, in dece-

dent's handwriting, references Mellon Bank and the "2 amendment to trust." The second amendment to trust was executed on November 12, 1993, the same date the decedent's last will was executed. Thus, by this date, decedent knew that the name of the bank was Mellon Bank.

The evidence in this case also shows that Mellon Bank has no history of losing wills entrusted to it by its clients. Mellon Bank keeps original wills in a vault to which access is restricted to few employees. Several Mellon Bank employees testified that with respect to the files they have handled, they had never known of a will to have been lost with the possible exception of decedent's 1993 will. (N.T. 5/6/08, pp. 63, 158.) This court finds that Mellon Bank did not lose decedent's 1993 will but rather mailed it to decedent with the letter dated February 4, 1994.

In sum, the estate of Fisher has met its burden to prove that decedent had possession and control of her 1993 will subsequent to its execution and prior to her death. Only one original will was executed and notarized and that will was sent to decedent on February 4, 1994. Because the 1993 will could not be found upon decedent's death, we must presume that decedent revoked or destroyed it. Petitioner Mellon Bank has failed to rebut said presumption by positive, clear and satisfactory evidence. For these reasons, Mellon Bank's argument regarding delivery of the 1993 will is without merit.

Mellon Bank's exceptions nos. 1 and 2 challenge our finding that decedent only executed one original will. Although Mellon Bank seemed to abandon these excep-

tions we will address them. Mellon Bank's former employee and notary public Wendy Smith testified that decedent executed one and only one original will on November 12, 1993. Testimony by Ms. Smith that indicates she originally recorded two will notarizations and then changed that record to reflect that only one will was actually notarized, does not change the fact that only one will was executed and notarized. In fact, Ms. Smith's testimony cleared up any confusion that more than one original was executed. (N.T. 5/6/08, pp. 91-97.) This testimony is clear and is consistent with our findings that Mellon Bank did not lose the 1993 will, but rather it was mailed to decedent by Patrice T. Irwin. Accordingly, Mellon Bank's exceptions are without merit.

Furthermore, we reject the third exception raised by Mellon Bank, alleging that the dispositive scheme of the will copy must be followed. Although the copy is signed at the end, it is not the original notarized will, and will not be treated as one. Mellon Bank cites to *Bright's Estate,* 54 D.&C.2d 397 (Montg. Cty. 1971), for the proposition that a will copy signed by the testator must be probated. Reliance on *Bright's Estate* is misplaced, however, as it involves a situation where the only document signed by the testator was a Xerox copy of the typed original will. Additionally, the Montgomery County Orphans' Court expressly stated that its ruling had nothing to do with the proof of a lost or destroyed will, or the application of the presumption of revocation to such situations. The *Bright's Estate* decision thereby distinguishes itself from the type of case that is currently before this court. We have determined that decedent's original will was in her possession, and therefore the presumption

of revocation or destruction arises by operation of law. All copies of the revoked or destroyed will are void.

We also found that decedent did not revive her prior will of 1969. Neither party produced any writing declaring the intention of decedent to revive the 1969 will nor was there evidence that the 1969 will was re-executed. This finding was not challenged by Mellon Bank in its exceptions. Decedent therefore died intestate.

## CONCLUSION

For the above-stated reasons, we find that the exceptions filed by Mellon Bank are without merit and enter the attached decree.

## DECREE

And now, December 31, 2008, upon consideration of exceptions to the August 20, 2008 adjudication, filed by Mellon Bank N.A., it is hereby ordered and decreed that the exceptions are overruled.