J-A09004-17

2017 PA Super 246

| RE: ESTATE OF CHARLES F. MADDI, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: MARY SUE GORESCHAK AND CHARLETTE MADDI | No. 1121 MDA 2016 |

Appeal from the Decree June 14, 2016
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s): 2015-01429

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

OPINION BY OTT, J.:                                    **FILED JULY 25, 2017**

Mary Sue Goreschak and Charlette Maddi ("Appellants") appeal the decree entered June 14, 2016, in the Court of Common Pleas of Lackawanna County, that denied Appellants' petition for appeal from the Register of Wills' decision to admit to probate a duplicate original of the Last Will and Testament of Charles F. Maddi (Decedent), their father.  Appellants claim the orphans' court erred (1) in failing to hold Decedent's sister, Lillian Saracino ("Sister"), to the correct legal standard for rebutting the presumption of revocation of a lost will, and (2) in allowing inadmissible hearsay testimony and relying upon circumstantial evidence to conclude Sister defeated the presumption.  **See** Appellants' Brief at 3.  Based upon the following, we affirm.

The orphans' court judge, the Honorable Thomas J. Munley, summarized the procedural background and facts of this case, as follows:

Before this Court is the Petition of Mary Sue Goreschak and Charlette Maddi ("Petitioners") seeking a reversal of the Register of Wills' decision to admit a copy of the Last Will and Testament of Charles F. Maddi to probate. The Petitioners are the adult daughters of the Decedent and they request that the Letters Testamentary issued to Respondent Lillian Saracino be reversed, and that this Estate consequently be administered through the Commonwealth's laws of intestacy. …

The testimony at the [April 13, 2016] hearing revealed the following facts. In the spring of 2013, Charles Maddi contacted Sandra Boyle, an attorney practicing in Northeastern Pennsylvania, and advised her that he wanted to hire her to prepare a new will, an advanced health care directive, and a power of attorney; Atty. Boyle's recollection was that Mr. Maddi had a prior, existing will and wished to change it. When Mr. Maddi met with Atty. Boyle, he brought his sister, Lillian Saracino, with him. He explained to Atty. Boyle that he wanted his sister to be named Executrix in the Will he wanted her to draft, that he had a list of named charities that he would like to leave certain amounts of money to, that he had other specific bequests for relatives, and finally, that he intended to leave any residuary estate to his sister. Mr. Maddi mentioned to Atty. Boyle that he had two adult daughters, and that he was not going to include them in any bequest in his will because he felt his daughters were well taken care of by him during his lifetime.

Weeks after the initial meeting with counsel, [on May 6, 2013,] Mr. Maddi returned to Atty. Boyle's office to review and sign the documents that she had prepared for him. Atty. Boyle testified that she, along with her secretary, who was also a notary, witnessed his signature, as did an adult individual named Curtis Stevens. As far as duplicate copies of the will, Atty. Boyle explained her usual process to be that she would produce several duplicates at her office, all of which are computer generated duplicates of the original, all to be individually and authentically signed. She emphasized that they are not photocopies of an original will, but duplicates, identical to the first computer-generated will, and they were all signed

individually by Mr. Maddi. Generally, this attorney's clients, Mr. Maddi included, were asked to sign or initial the margin of every page of each duplicate will until he or she got to the last page, which would then be signed and dated by the client, and that signature would be witnessed and notarized.

At the end of her meeting with Mr. Maddi, where he signed the duplicate wills and other documents Atty. Boyle had prepared for him, she gave him the "original" with one duplicate copy, and she kept a duplicate copy; again, each was originally signed, witnessed, and notarized, as were the financial power of attorney documents. After this appointment, Mr. Maddi left with two of the three "originals", leaving one for safekeeping with Atty. Boyle, and never again contacted Atty. Boyle with respect to changing or revoking his will.

Charles Maddi departed this earth on October 31, 2015, and at death, he was unmarried and was survived by two adult children, Mary Sue Goreschak and Charlette Maddi. He was also survived by his sister Lillian Saracino. On December 9, 2015, Ms. Saracino filed a Petition seeking to admit to probate a duplicate copy of her brother's will, and this duplicate copy contained original signatures of Mr. Maddi and other witnesses. No "original" will was found among the Decedent's possessions in his home, nor was any will found in the safe deposit box the [Decedent] maintained at his bank. According to Lillian Saracino, neither she nor anyone else was able to find the will among his possessions, most likely because Charles Maddi had an unusual way of filing and storing papers, bills, and other documents which was essentially known only to him. Also, within hours after the passing of Charles Maddi, she as well as other relatives of the Decedent began removing many items of personal property from his home in an attempt to begin cleaning out the home; Mary Sue Goreschak described what was initially being cleared from the home as "bags of paperwork, folders". The will eventually presented by Respondent Saracino to the Register of Wills was the signed duplicate from Atty. Boyle's files. After a hearing, the Register admitted it to probate.

Other significant facts revealed at the hearing include Lillian Saracino's statements that she had an extremely close relationship with her brother, spoke with him every evening, and that he never expressed to her any desire to revoke or destroy the will prepared for him by Atty. Boyle. She also stated that it

was Charles Maddi's acknowledged intention, memorialized in his will, to not make any bequest for his daughters because he believed that he had fully provided for his children while he was alive, in fact transferring several income-generating properties to his daughter Mary Sue Goreschak just prior to making the will in question. Ms. Goreschak testified that she lived near to her father and was a regular visitor at his home. She herself, along with her son, had keys to Mr. Maddi's residence, as did her one of her uncles and the Decedent's sister. She also stated her belief that prior to his death, her father could have been looking for another lawyer to make a new will for him, although to her knowledge her father never spoke with another attorney and never had another will created. While she had given her father the business card of an attorney she herself was familiar with, said attorney testified at the Court hearing and definitively stated that Charles Maddi had never contacted him for any reason.

Orphans' Court Opinion, 6/14/2016, at 1–4. Based on the evidence presented at the hearing, the orphans' court concluded:

Having heard the testimony, considered the factual circumstances and legal considerations of this matter, and evaluated the witnesses' credibility, it is this Court's decision that the Register of Wills was correct in admitting the duplicate original will of Charles Maddi to probate.

*Id.* at 9. This appeal followed.[1]

Our scope and standard of review on appeal from a decree of the Orphans' Court adjudicating an appeal from probate is as follows:

In a will contest, the hearing judge determines the credibility of the witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error

---

[1] The orphans' court did not order Appellants to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

of law or abuse of discretion. Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

*Estate of Nalaschi*, 90 A.3d 8, 11 (Pa. Super. 2014) (citation omitted).

*See also Burns v. Kabboul*, 595 A.2d 1153, 1161 (Pa. Super. 1991).

Appellants first argue that the orphans' court failed to hold Sister to the correct legal standard in rebutting the presumption that Decedent destroyed and revoked his will prior to this death.

The legal principles regarding a lost will are well settled:

Our Supreme Court has repeatedly held that "where a [testator] retains the custody and possession of [his] will and, after [his] death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by the [testator]." *In re Estate of Murray*, 404 Pa. 120, 129, 171 A.2d 171, 176 (1961). *See also In re Estate of McCaffrey*, 453 Pa. 416, 418 n.3, 309 A.2d 539, 540 n.3 (1973) (same). "To overcome that presumption, the evidence must be positive, clear and satisfactory." *In re Estate of Murray*, 404 Pa. at 129, 171 A.2d at 176. Moreover, to prevail over the presumption and establish the existence of a lost will, "the proponent of the copy of the will must prove that: 1) the testator duly and properly executed the original will; 2) the contents of the will were substantially as appears on the copy of the will presented for probate; and 3) when the testator died, the will remained undestroyed or revoked by him." *Burns v. Kabboul*, 407 Pa. Super. 289, 595 A.2d 1153, 1167-68 (Pa. Super. 1991).

\*\*\*\*

… "Declarations of intent, condition, and circumstances of family are insufficient to establish [whether a will remains undestroyed or unrevoked by a decedent] and thus rebut the existent legal presumption." *In re Estate of Keiser*, 385 Pa. Super. 24, 560 A.2d 148, 150 (Pa. Super. 1989) (citing *Gardner v. Gardner, et al.*, 177 Pa. 218, 35 A. 558 (1896). "Accordingly, a court will not weigh the probability of the decedent's wishes or otherwise

speculate as to the motives which may or may not have influenced the [testator] in the direction of intestacy." ***Id.*** (citing ***O'Neill's Estate***, 58 Pa.D.&C. 351 (1946)).

***In re Estate of Janosky***, 827 A.2d 512, 519-20, 521 (Pa. Super. 2003) (finding evidence of the decedent's close relationship with appellant and lack of any relationship with appellees was "in and of itself [] insufficient to rebut the presumption of destruction").

Appellants concede that Sister has proved the first two factors necessary to overcome the presumption that the Decedent revoked or destroyed the original will, *i.e.*, that (1) the testator duly and properly executed the original will; (2) the contents of the will were substantially as appears on the copy of the will presented for probate. Appellants only dispute that Sister proved the third factor, *i.e.*, that "when the testator died, the will remained undestroyed or revoked." ***Janosky, supra***, 827 A.2d at 520, *citing* ***Burns v. Kabboul, supra.*** ***See*** Appellants' Brief at 10.

The orphans' court, in finding that Sister had established the third factor, opined:

> … In looking at the known facts in light of the third element, which concerns whether the testator revoked or destroyed the will during his lifetime, the Decedent's daughters point to the significant fact that their father's will was not found in his home after his passing, a circumstance that, they believe, shows that he must have destroyed the will which Atty. Boyle prepared for him. Also, Ms. Goreschak recalled her father mentioning on at least one occasion that he might be interested in creating a new will, although no new will was contained among his possessions, and the attorney Ms. Goreschak referred to her father was never contacted by him. The only person who testified about the possibility of the Decedent wanting to change his testamentary

plans was Ms. Goreschak, who was not included in the will drafted by Atty. Boyle, and whose interests would be greatly enhanced should this estate be administered as one that is intestate.

In regard to the third component of the test set forth in **Burns v. Kabboul, supra**, there are several facts and circumstances relied on by Ms. Saracino reflecting her proposal that her brother's will was not destroyed or revoked by him, and simply not found in any of the places his relatives thought they might find it, such as Mr. Maddi's safe deposit box and the boxes in his house where he would normally keep items such as bills and bank statements. She was close with her brother, and he not only brought her with him to Atty. Boyle's office on the occasions he met with the attorney to discuss and execute his will, but she stated that, when Atty. Boyle asked her brother if he wanted to meet with counsel privately, without Ms. Saracino being present, Mr. Maddi insisted that he have his sister with him while he discussed his plans with Atty. Boyle. Ms. Saracino interprets the circumstance of her being included in this confidential meeting by her brother as a detail which supports the idea that, if Mr. Maddi decided to revoke his 2013 Will and rework his testamentary plans, he surely would have told his sister, as she was the residuary beneficiary of that will, the person who was intimately familiar with his estate planning, and a relative with whom he had a caring and very long-standing relationship. Ms. Saracino also asks the court to take notice of the fact that her brother transferred numerous properties to one of his daughters before the execution of his will, which seems reflective of his written wishes to leave his legacy to persons other than this daughter, since, as the will stated, he believed he had generously provided for her prior to his death. Moreover, the Decedent's sister points to his convoluted filing system as suggestive of the circumstance that the will was still in existence at the time of Mr. Maddi's passing and not located because either no one knew where in the Decedent's home to look for it, or it was inadvertently misplaced while the Decedent's home was being cleaned and emptied.

The Decedents' daughters point to what they term a lack of positive evidence shown by [Sister] to rebut the legal presumption of the Decedent having destroyed his will. The daughters maintain that, while [Sister] might have offered interesting suppositions as to what could have happened with

the will in question, she hasn't presented sufficient, direct evidence which would demonstrate to the Court that the presumption was defeated. We disagree. Having heard all the evidence presented and considering the credibility of the witnesses' testimony and the fact pattern which emerged from their remarks, we find that the most logical conclusion is the one put forth by [Sister].

The Decedent hired Atty. Boyle to prepare a will to his specifications, which she did, and which he then executed. Mr. Maddi stated in his will that he had financially provided for his daughters in his lifetime, and consistent with this, he had transferred approximately twelve different properties to his daughter in exchange for one dollar prior to executing his will. No one who testified was aware of Mr. Maddi contacting any other attorney to prepare a new will, and it was only Ms. Goreschak, who was to receive no bequest under the will drawn for her father by Atty. Boyle, who recalled her father expressing dissatisfaction with that will. Despite this alleged discontent with his Estate planning, the Decedent never, to anyone's knowledge, changed his will. Mr. Maddi had a document filing system known only to him, and though the will was not seen among his possessions after his passing, all of the evidence, other than the testimony of Ms. Goreschak, points to the Decedent's will prepared by Atty. Boyle being the embodiment of his wishes for his testamentary estate, and being overlooked or unseen in the process of Mr. Maddi's relatives cleaning out his home after his death.

… Having heard the testimony, considered the factual circumstances and legal considerations of this matter, and evaluated the witnesses' credibility, it is this Court's decision that the Register of Wills was correct in admitting the duplicate original will of Charles Maddi to probate. No fact in this case points to Mr. Maddi second-guessing his careful estate planning, let alone destroying his written wishes; every fact, including the deeding of many properties to his daughter just prior to creating his will, suggests that he and Atty. Boyle created a thorough and considered scheme of intended distribution, by way of his will, which we believe was unfound by relatives, as opposed to revoked or destroyed by the testator. Lillian Saracino has overcome the presumption that Charles Maddi destroyed or revoked his May 6, 2013 will through proof by positive, clear, and satisfactory evidence and therefore, the request that the

duplicate original of the May 6, 2013 will provided by Atty. Boyle should be admitted to probate.

Orphans' Court Opinion, 6/14/2016, at 5–8, 9.

Appellants cite the orphans' court's finding that "Mr. Maddi mentioned to Atty. Boyle that he had two adult daughters, and that he was not going to include them in any bequest in his will because he felt his daughters were well taken care of by him during his lifetime,"[2] and question "how these facts help at all in concluding that when the testator died, his Will remained undestroyed or revoked by him." Appellants' Brief at 11. Appellants also claim that the orphans' court's statement that "[t]he only person who testified about the possibility of the Decedent wanting to change his testamentary plans was Ms. Goreschak,"[3] suggests the orphans' court misplaced the burden of proof on Appellants, when the law requires Sister to produce "positive, clear and satisfactory" evidence to overcome the presumption. Appellants' Brief, *id.* Appellants further assert the orphans' court's conclusion that because Sister and Decedent were close, "if Mr. Maddi decided to revoke his 2013 will … he surely would have told his sister,"[4] is "not based on direct evidence, but it is simply speculation."

---

[2] Orphans' Court Opinion, 6/14/2016, at 2.

[3] Orphans' Court Opinion, *supra,* at 6.

[4] *Id.* at 7.

Appellants' Brief at 12.  Appellants contend the orphans' court's conclusion that the Decedent's Will was not found because Decedent had a "convoluted filing system"[5] is also speculation.  Appellants' Brief, *id.*  In this regard, Appellants maintain the evidence that the Will was not found after a search of Decedent's house and the bank safety deposit box establishes — not overcomes — the presumption of revocation of the Will.

Appellants stress that proof to overcome the presumption must be "positive, clear and satisfactory evidence."  *Id.* at 14.  Appellants point out "declarations of intent, condition and circumstances of family are insufficient to establish the[] factors [the proponent of a contested will must prove to establish the existence of a lost will] and thus rebut the existent legal presumption."  *Id.* at 14, *citing* **Gardner v. Gardner, et al.**, 35 A. 558 (Pa. 1896).  Appellants, in support of their position, claim the orphans' court "relied heavily upon declarations of intent, condition, and circumstances of family in rebutting the presumption in the instant matter."  Appellants' Brief, *id.*

Based on our review, we conclude the arguments presented by Appellants fail to warrant relief.  The orphans' court correctly recognized Sister bore the burden of proof to overcome the presumption of revocation and that "the contrary evidence presented must be positive, clear and

---

[5] *Id.* at 7.

satisfactory." Orphans' Court Opinion, 6/14/2016, at 5, *citing* **Murray Will**, 171 A.2d 171 (Pa. 1961). Furthermore, we find the orphans' court correctly applied **Gardner, supra,** wherein the Pennsylvania Supreme Court indicated that "all presumptions of this kind may be rebutted by proof of the actual facts." **Id.**, 35 A. at 561.

Regarding the above arguments presented by Appellants, it is important to note that the court's consideration of Decedent's statement to Attorney Boyle that he had two adult daughters, and that he was not going to include them in any bequest in his will because he felt his daughters were well taken care of by him during his lifetime was a proper consideration. **See Gardner, supra** 35 A. at 561 ("[N]ot only the testator's character, condition, acts, and declarations, but the conduct and interest of those who were around him from and after the date of the making of his will [are] legitimate subjects of inquiry. Each of these lines of proof is important in strengthening the other and both together seem necessary to constitute full proof.").

Further, the orphans' court's statement that "[t]he only person who testified about the possibility of the Decedent wanting to change his testamentary plans was Ms. Goreschak,"[6] evidenced proper consideration of "all of the evidence, not only that offered on part of the plaintiffs but that

---

[6] **Id.** at 6.

offered on part of the defendants, bearing upon the same subject-matter."
***Gardner, supra***, 35 A. at 561.

Finally, the court's statements to the effect that Decedent "surely would have told his sister" if he decided to revoke his 2013 Will, and that the Will was not found because Decedent had a "convoluted filing system" are the court's reiteration of Sister's testimony, not findings in support of its decision. ***See*** Orphans' Court Opinion, 6/14/2016, at 7.

Here, the orphans' court considered the **facts** (1) that Decedent told Attorney Boyle, and stated in his Will, that he believed he had adequately provided for Appellants during his lifetime, (2) that, consistent with his statement to Attorney Boyle, Decedent transferred numerous properties to Appellant Goreschak prior to the execution of his May 6, 2013 Will, (3) that the attorney referred to Decedent by Appellant Goreschak testified he was never contacted by Decedent for a new will, and (4) that no one else who testified was aware that Decedent contacted any other attorney to prepare a new will.

Based on this evidence, the orphans' court could properly infer that Decedent's testamentary plan was finalized with the Will and transfer of property to Appellant Goreschak, that he was not dissatisfied with his current will, and that the decedent's Will was overlooked by family members when Decedent's home was cleaned out after his death. ***See Gardner***, 35 A. at 561 ("[C]ircumstantial evidence … may be sufficient for [the fact-

finder] to infer that the testator did not destroy this will."). Accordingly, Appellants' first claim fails.

In the second claim raised in this appeal, Appellants argue that the orphans' court erred in allowing inadmissible hearsay evidence and relying on circumstantial evidence. In this regard, Appellants complain "the [orphans' court] relied heavily on the statement that 'Mr. Maddi mentioned to Atty. Boyle that he had two adult daughters, and that he was not going to include them in any bequest in his will because he felt his daughters were well taken care of by him during his lifetime.'" Appellants' Brief at 15.

"[I]t is well settled that the admissibility of evidence is a determination left to the sound discretion of the trial court, and it will not be overturned absent an abuse of discretion or misapplication of law." *In re Fiedler*, 132 A.3d 1010, 1025 (Pa. Super. 2016) (quotations and citations omitted).

At the hearing, the following exchange occurred during the direct examination of Sandra Boyle, Decedent's attorney:

Q. Did he tell you what his intention would be as far as his daughters in the will?

[APPELLANTS' ATTORNEY]: Just note my objection, your Honor.

THE COURT: Do you want to answer that before I make a ruling?

[SISTER'S ATTORNEY]: Your Honor, I don't think – the dead man's rule would apply. She's testifying to her conversation. There's no privacy or privilege issues. There was a third party present.

THE COURT: I'll allow it.

- 13 -

A. He indicated to me that his daughters were well provided for and that he did not wish to include them in the will.

> THE COURT: For the record, attorney, that's the issue here. If I exclude that kind of evidence we'll never be able to find out what's going on here.

[APPELLANTS' ATTORNEY]: I understand your Honor, I just don't know of any exception to the hearsay rule for that.

N.T., 4/13/2016, at 13-14.

Pennsylvania Rule of Evidence 801(c) defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). However, our Courts have explained:

> Evidence of a decedent's declaration of intention is admissible in Pennsylvania as an exception to the hearsay rule where such intent is itself a material fact. *Ickes v. Ickes*, 237 Pa. 582, 85 A. 885 (1912). In addition, a decedent's declaration of intention to do a relevant act may be admissible as some evidence that he later performed that act, e.g., the declarations of the victim of a homicide that she intended to go to the accused's office on the night of her death (*Commonwealth v. Marshall*, 287 Pa. 512, 135 A. 301 (1926)), or the declaration of the alleged victim that she intended to take her own life (*Commonwealth v. Santos*, 275 Pa. 515, 119 A. 596 (1923)). See also McCormick, Evidence, §§ 269-270.

*Hughes v. Bailey*, 195 A.2d 281, 284 (Pa. Super. 1963).

Pennsylvania Rule of Evidence 803 provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: …

**(3) Then-existing Mental, Emotional, or Physical Condition**. A statement of the declarant's then existing state of mind (such as motive, intent or plan) or emotional, sensory,

or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).  With regard to Rule 803(3), this Court, in **Schmalz v. Mfrs. and Trade Trust Co.**, 67 A.3d 800 (Pa. Super. 2013), stated:

Traditionally, statements of the declarant's then existing state of mind are considered reliable based on their spontaneity. **Commonwealth v. Hess**, 378 Pa. Super. 221, 548 A.2d 582, 585 (Pa. Super. 1988) (citing Packel & Poulin, Pennsylvania Evidence, § 803(3)). There are ordinarily three instances in which the state of mind exception is applicable. First, the exception may apply to prove the declarant's state of mind when that state of mind is an issue directly related to a claim or defense in the case. **See [Commonwealth v.] Laich,** [566 Pa. 19, 777 A.2d 1057, 1060-1061 (Pa. 2001)]. Second, the exception can apply to demonstrate that a declarant did a particular act that was in conformity with his or her statement after having made the statement. **See Commonwealth v. Riggins**, 478 Pa. 222, 386 A.2d 520, 526 (1978); **Ickes v. Ickes**, 237 Pa. 582, 85 A. 885, 887-888 (Pa. 1912). Finally, an out of court statement related to the person's memory or belief is admissible in the limited instance where it relates to the "execution, revocation, identification or terms of the declarant's will." Pa.R.E. 803(3).[7]

---

[7] Prior to March 18, 2013, Pa.R.E. 803(3) read:

(3) Then existing mental, emotional or physical condition.  A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health.  A statement of memory or belief offered to prove the fact remembered or believed is included in this exception only as it relates to the execution revocation identification, or terms of declarant's will.

Pa.R.E. 803(3).  As noted in **Schmalz**,

*(Footnote Continued Next Page)*

- 15 -

*Id.* at 804-805.

Based on our review, we conclude Decedent's statement was admissible under Rule 803(3). Furthermore, as discussed above, **Gardner** indicates that circumstantial evidence is properly considered by the fact finder in deciding whether the evidence is sufficient to rebut the presumption of revocation. **Gardner**, 35 A. at 561. Accordingly, we find the orphans' court properly allowed the challenged statement of Decedent into evidence.

In sum, we conclude that Judge Munley correctly recognized the burden of proof was upon Sister to overcome the presumption, properly found Sister presented positive, clear and satisfactory evidence that defeated the presumption, and correctly admitted Decedent's statement as an exception to the hearsay rule.

Decree affirmed.

---

*(Footnote Continued)* ——————————

The Pennsylvania Supreme Court has promulgated new rules of evidence, which take effect on March 18, 2013. The rule changes result in no substantive change and are intended to conform the Pennsylvania rules, which reference the federal rules of evidence, with the stylistic changes made to the federal rules that became effective on December 1, 2011.

*Id.,* 67 A.3d at 804 n.4.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2017