J-A17017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF: FREDERICK GITTERMAN A/K/A FRED GITTERMAN, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GITTERMAN, HEIDI E., AND GLEIT, HOWARD L., ESQ, EXECUTOR OF THE ESTATE OF FREDERICK GITTERMAN, DECEASED | : : : : | No. 793 EDA 2020 |

Appeal from the Decree Entered February 6, 2020
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s):  No. 0286-2018-O

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 12, 2021**

Appellants, Heidi E. Gitterman and Howard L. Gleit, Esquire, appeal from

the decree entered in the Delaware County Court of Common Pleas Orphans'

Court, which granted the petition for citation sur appeal filed by Appellee,

Laurence M. Cramer, Esquire.  The decree also removed from probate a copy

of the last will and testament of Frederick Gitterman ("Decedent") and set

aside letters of administration issued to Appellants.  We affirm.

The relevant facts of this appeal are as follows.

> [Decedent] and Heidi E. Gitterman met when each were a
> matriculating student in 1966 attending the University of
> Wisconsin.  They were married in 1970 and following a
> separation of sometime prior divorced as of 1981.  No
> children were born of this union and neither [Decedent] nor
> Heidi E. Gitterman subsequently remarried, although the

---

[*] Retired Senior Judge assigned to the Superior Court.

decedent had thereafter what seems to be at least one (1) significant and long-term relationship….

Although divorced and not bound by any children, [Decedent] and Heidi Gitterman had varied and periodic contact from their 1981 divorce through 2011, including but not limited to telephone conversations, holiday cards, letters and emails, all of which evidenced a mutual fondness.

From 2012 until [Decedent's] March 2018 passing and coinciding with his growing impoverishment, he and his ex-wife remained in more frequent contact through regular telephone conversations, as well as routine emails. The tone and content of those admitted exhibits … material to such considerations, as well as the various other evidentiary items and witness testimony salient to [Decedent] and Heidi E. Gitterman's personal relationship during particularly the last six (6) years immediately preceding the decedent's March 2018 passing were all positive and at least facially that of a wistful, yet reciprocated affection.

Despite the former spouses enjoying a relationship of mutual fondness and wistfully reciprocate affections, there was throughout the intervening thirty-seven (37) years between their divorce and [Decedent's] March 2018 death not a single instance of in-person contact.

The relationship between [Decedent] and his only sibling, Sue Ellen Epstein Reinish, was for many years cordial, but not overly close with direct interactions seemingly limited to familial celebrations and some telephone contacts. After he … became impoverished, [Decedent] solicited money from Ms. Reinish and her husband, Robert Reinish, which they at first gave with the understanding those funds would be repaid. [Decedent] continued to request from Ms. Reinish additional amounts of money which at some point she declined to provide because of her sibling not having paid back any of the previously advanced funds and certain of her own familial financial obligations. Once Ms. Reinish refused to give her brother any more money, the relationship as it then was between the siblings deteriorated and that estrangement continued through [Decedent's] March 2018 death.

Just after his marriage to Heidi E. Gitterman, [Decedent] attended from 1970 through 1973 the University of California Law School from which he graduated in his class's upper percentile. [Decedent] on his graduation from law school returned to the Philadelphia area, was hired by Blank Rome, and worked for approximately four (4) years as a member of that firm's estates department developing in that area a proficient expertise. The decedent … left Blank Rome and began his own legal practice and continued with the same until his law license some years later was suspended, a licensing suspension which remained in place for an appreciable time through his March 2018 passing.

[F]rom the loss of his law license, [Decedent] spent the last several years of his life impoverished. After he was evicted from his Radnor Township … home via a mortgage foreclosure action, he lived for a number of years mainly in a series of motel rooms, the most recent of which on his March 2018 death was at the America's Best Value Inn, Media, Pennsylvania, and he to meet his daily living expenses relied almost exclusively on the generosity of others, including but not limited to in large part his former wife, Heidi E. Gitterman, her sister, Francine Smolen, friends, Phyllis J. Allen and Thomas S. McNamara, Esquire, as well as his sister, Sue Ellen Epstein Reinish.

[Decedent] throughout his ongoing solicitation of money from friends and family most often couched repaying those funds with discussions and/or commentary about his being supposedly positioned to consummate any number of apparently lucrative business opportunities and/or that he would be imminently resuming a legal practice. He relatedly and not infrequently referenced various of his purported assets seemingly for these funds received regularly from friends and family as an informal collateral.

(Orphans' Court Opinion, filed January 13, 2021, at 49-51) (internal footnotes and citations to the record omitted).

Decedent died on March 6, 2018. On April 10, 2018, Appellee filed a petition for the granting of letters of administration. In the petition, Appellee

claimed that Decedent died intestate, and his only surviving relative was Ms. Reinish. The petition included a letter from Ms. Reinish renouncing her right to administer the estate and requesting the issuance of letters of administration to Appellee. That same day, the register of wills granted letters of administration to Appellee and appointed him executor.

On May 7, 2018, Appellants filed a petition for the removal of Appellee as executor. Appellants alleged that Decedent executed a handwritten will, dated November 15, 2013 ("2013 will"). Appellants claimed that Decedent faxed a copy of the will to Ms. Gitterman in 2013, which she put away for safekeeping. Ms. Gitterman found her copy of the will on April 22, 2018. The 2013 will left Decedent's entire estate to Ms. Gitterman and named her as executrix.[1] Appellants concluded that Ms. Gitterman's copy of the 2013 will "must be recognized as the governing instrument of [Decedent's] Estate." (Petition for Removal, filed 5/7/18, at 3).

The register of wills conducted a hearing on February 13, 2019. On April 9, 2019, the register of wills entered an order revoking the letters of administration issued to Appellee. Thereafter, the register of wills granted letters of administration to Attorney Gleit and accepted the copy of the 2013 will for probate.

_____

[1] Ms. Gitterman subsequently renounced her position as executrix under the 2013 will and appointed Attorney Gleit as executor. (Petition for Removal, filed 5/7/18, at 2).

On April 15, 2019, Appellee filed a notice of appeal and petition for citation sur appeal from probate. Appellants filed an answer to Appellee's petition on May 1, 2019. On October 23, 2019, the Orphans' Court conducted an evidentiary hearing.[2] At that time, Appellee presented prior deposition testimony from Ms. Reinish. Appellants presented testimony from Ms. Gitterman and Decedent's friends, Attorney McNamara and Ms. Allen. Appellants also presented a handwriting expert, who opined that Decedent was the author of the handwritten 2013 will.

On February 6, 2020, the court entered a decree granting Appellee's petition for citation sur appeal from probate. The decree also removed from probate the copy of the 2013 will and set aside the letters of administration issued to Attorney Gleit. In its opinion in support of the decree, the court indicated that the original 2013 will was not found after Decedent's death. Because Decedent retained possession of the original 2013 will and, after his death, the 2013 will was not found, a presumption arose that it was revoked or destroyed by Decedent. The court concluded that Appellants had failed to rebut this presumption.

Appellants timely filed a notice of appeal on February 21, 2020. On

---

[2] "A hearing on appeal to the Orphans' Court from a decision of the Register of Wills is *de novo*, unless the parties have agreed otherwise." ***In re Estate of Brumbaugh***, 170 A.3d 541, 543 n.1 (Pa.Super. 2017). "In a hearing *de novo*, the Orphans' Court does not base its decision on the testimony offered before the Register, but hears all evidence that either party desires to present and makes its own credibility determinations." ***Id.***

March 2, 2020, the court ordered Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellants subsequently complied.

Appellants now raise four issues for our review:

Whether the [Orphans' Court] erred intending that Appellants failed to properly reserve any issues for further review?

Whether the [Orphans' Court] erred in finding that Appellants did not overcome the presumption of revocation in spite of overwhelming proof of the intent of the testator, and speculation as to circumstances of his destruction of his will.

Whether the [Orphans' Court] erred in failing to recognize the mandates of [*In re Estate of Wilner*, 636 Pa. 277, 142 A.3d 796 (2016)] in permitting proof of rebuttal of the presumption of a lost will by any lawful means.

Whether the [Orphans' Court] erred in finding that Appellants had not provided clear, direct, convincing evidence adequate to overcome the presumption of revocation in refusing to admit the testator's will to probate?

(Appellants' Brief at 4).

In their first issue, Appellants complain about the court's conclusion that Appellants' prolix Rule 1925(b) statement did not preserve any issues for appellate review. Appellants insist that they raised the issues in their Rule 1925(b) statement in good faith. We need not tarry long with this issue, however, as our review of the record does not reveal a basis to support waiver. *See Eiser v. Brown & Williamson Tobacco Corp.*, 595 Pa. 366, 383, 938 A.2d 417, 427-28 (2007) (encouraging lower courts to recognize that on rare

occasions party may, in good faith, believe that large number of issues are worthy of pursuing on appeal; explaining that number of issues raised in Rule 1925 (b) statement does not, without more, provide basis upon which to deny appellate review where appeal otherwise complies with mandates of appellate practice). Accordingly, we proceed to address Appellants' remaining claims.

In their second, third and fourth issues, Appellants rely on **Estate of Wilner** for the proposition that "the terms of a lost will [may] be established in any lawful manner by any clear and convincing evidence." (Appellants' Brief at 18) (quoting **Estate of Wilner, supra** at 293, 142 A.3d at 806). Appellants insist that the court did not follow this "more relaxed" standard; rather, the court improperly utilized "a pre-**Wilner** standard" that required Appellants to convince the court "without hesitancy" that the 2013 will was not destroyed or revoked. (**Id.** at 18-19). Appellants maintain that the imposition of the incorrect standard "created a barrier too difficult for litigants to overcome." (**Id.** at 19).

Additionally, Appellants complain that the court ignored overwhelming evidence of the loving relationship between Decedent and Ms. Gitterman. "Conversely, [Decedent's] relationship with his sister, [Ms. Reinish], … was the opposite of the one he shared with [Ms.] Gitterman." (**Id.** at 23-24). Appellants aver that evidence of these contrasting relationships provided clear and convincing proof that the 2013 will "would be in complete alignment" with Decedent's testamentary intent. (**Id.** at 20). Likewise, Appellants assert

there was no evidence that they were engaging in fraud by attempting to probate the 2013 will. On this record, Appellants argue that the terms of the 2013 will should be taken at face value.

Appellants further argue that the record did not support the court's finding that Decedent's "need for money caused him to use the [2013] will as a ploy or prop during the years between 2012 and 2018." (**Id.** at 19). Appellants emphasize Ms. Gitterman's testimony that she would have continued to lend money to Decedent regardless of whether she was named as a beneficiary in his will. Moreover, Appellants contend that the court's finding is unreasonable in light of the state of Decedent's relationship with Ms. Reinish.

Appellants also dispute the court's inference that Decedent would have given the original 2013 will to a friend for safekeeping if it had existed. Appellants reiterate that Decedent's "indigent, itinerant, and nomadic lifestyle" contributed to his inability to prioritize the preservation of the original 2013 will. (**Id.** at 34). Appellants also submit that, "even in more normal circumstances," Decedent was a person who would lose documents. (**Id.**) Consequently, Appellants claim that the court's inference was unfounded. Based upon the foregoing, Appellants conclude that this Court must reverse the decree granting Appellee's petition for citation sur appeal from probate. We disagree.

Our scope and standard of review on appeal from a decree of the

Orphans' Court adjudicating an appeal from probate is as follows:

> The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion. Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

**Estate of Maddi**, 167 A.3d 818, 822 (Pa.Super. 2017), *appeal denied*, 644 Pa. 655, 178 A.3d 107 (2018) (quoting **In re Estate of Nalaschi**, 90 A.3d 8, 11 (Pa.Super. 2014)).

"Where a testator retains the custody and possession of his will and, after his death, the will cannot be found, a presumption arises that it was revoked or destroyed by the testator." **Estate of Brumbaugh, supra** at 544.

> To overcome that presumption, the evidence must be positive, clear and satisfactory. Moreover, to prevail over the presumption and establish the existence of a lost will, the proponent of the copy of the will must prove that: 1) the testator duly and properly executed the original will; 2) the contents of the will were substantially as appears on the copy of the will presented for probate; and 3) when the testator died, the will remained undestroyed or revoked by him.
>
> *   *   *
>
> Declarations of intent, condition, and circumstances of family are insufficient to establish [whether a will remains undestroyed or unrevoked by a decedent] and thus rebut the existent legal presumption. Accordingly, a court will not weigh the probability of the decedent's wishes or otherwise speculate as to the motives which may or may not have influenced the [testator] in the direction of intestacy.

**Estate of Maddi**, supra at 822 (quoting **In re Estate of Janosky**, 827 A.2d

512, 519-20, 521 (Pa.Super. 2003)) (internal citations and quotation marks omitted).

In **Estate of Wilner**, our Supreme Court addressed the proper application of the statutory "two-witness rule" for proving a will where the original, executed will is lost. **See Estate of Wilner, supra** at 279, 142 A.3d at 797. There, the decedent executed a will in 2007. The attorney who drafted the will kept a conformed copy for his files and gave another copy and the original to the decedent. In April 2010, the same attorney prepared a codicil that referenced the 2007 will and named the decedent's live-in caregiver, Ms. Baker, as the executrix.

The decedent died in 2011. When Ms. Baker went to retrieve the will, she discovered that it had been removed from the metal box where the decedent kept it. Although the will was missing, the original codicil remained in the box. Without the original will, Ms. Baker sought to have the attorney's conformed copy of the will, together with the original codicil, entered into probate. The decedent's intestate heir objected. Following evidentiary hearings, the court directed that the conformed copy of the will and the original codicil be admitted to probate and that letters of administration be issued to Ms. Baker.

The court acknowledged that, when an original will in the testator's possession cannot be located, a rebuttable presumption arises that the testator destroyed it with the intent to revoke. Significantly, the court found

sufficient proof to rebut the presumption, as it generally credited the testimony from Ms. Baker and her witnesses. The court also stated that, to probate a copy of a lost will, the will's proponent must adduce proof by two witnesses of its execution and contents. Although only one witness, the decedent's attorney, testified about the contents of the original will, the court determined that such testimony was sufficient under the unique circumstances of this case.

On appeal, this Court reversed. This Court concluded that the Orphans' Court erred in accepting the conformed copy of the will on the testimony of a single witness. Our Supreme Court then granted further review "to consider the continuing vitality of the two-witness rule and, in particular, whether it properly applies to a will's contents, as opposed to its execution." *Id.* at 284, 142 A.3d at 800. The Supreme Court initially determined that Section 3132 of the Probate, Estates and Fiduciaries Code applies to lost wills and requires all wills to be "proved" by the oaths or affirmations of two competent witnesses. *See id.* at 286-87, 142 A.3d at 802. In reviewing the statute, the Court held that "while Section 3132 of the Code applies to lost wills, it only governs the 'proving' of a will in the narrow, technical sense of proving its validity as a testamentary document, and not to proving its contents." The Court added:

> Still, if a will has been lost, its contents must be proved in some way. In view of the foregoing, the General Assembly has, by design or inadvertence, left it to the judiciary to address proof of a lost will's contents through its own

- 11 -

evidentiary requirements. As this case demonstrates, requiring the testimony of two witnesses relative to the terms of a lost will—or otherwise imposing overly burdensome proof requirements—can unnecessarily frustrate the decedent's wishes, particularly where a photocopy or a conformed copy is available.

Overall, then, and in light of the varying ways in which the terms of a lost will may be susceptible of proof, we believe that flexibility is required, and hence, that it is appropriate for this Court to establish an evidentiary standard rather than mandating a particular manner of proof—at least until the General Assembly speaks to the topic. A review of the requirements embodied in lost-will statutes enacted in other jurisdictions reflects that some such jurisdictions allow the terms of a lost will to be established in any lawful manner by clear and convincing evidence.

We believe this represents an appropriate standard of proof.

*Id.* at 292-93, 142 A.3d at 805-06 (internal citations and footnotes omitted).

Instantly, the Orphans' Court evaluated the evidence presented at the October 23, 2019 evidentiary hearing. Much of the evidence focused on: 1) Decedent's lack of financial resources, which coincided with the loss of Decedent's law license; 2) Decedent's relationship with Ms. Reinish, which deteriorated after Ms. Reinish stopped providing financial assistance to Decedent; and 3) Decedent's relationship with Ms. Gitterman, which remained positive despite their divorce and Decedent's reliance on Ms. Gitterman for financial assistance. (**See** Decree, filed 2/6/20, at 10-11).[3] In light of the

_____

[3] We note that the copy of the decree included as "Appendix A" in Appellants' brief is incomplete. Although the copy in Appellants' brief contains the first two (2) pages of the decree, the original decree in the certified record spans
*(Footnote Continued Next Page)*

debts that Decedent accrued with Ms. Gitterman, Decedent sent a copy of the 2013 will to Ms. Gitterman. In 2016, Decedent also sent an email to Ms. Gitterman, which consisted of a document titled "Last Will and Testament." (*Id.* at 12). As noted by the court, the "devising directions" in the 2016 email mirrored the directives in the 2013 will. (*Id.*) Despite Ms. Gitterman's possession of these testamentary documents, Decedent's friends and family did not find the original 2013 will with Decedent's possessions after his death.

Initially, the court determined that Appellants presented sufficient credible evidence to establish that Decedent "personally handwrote and signed" and "properly and duly executed" the 2013 will. (*Id.* at 13, 14). In the absence of the original 2013 will, a presumption arose that Decedent had revoked or destroyed it. (*Id.* at 13). The court concluded that Appellants did not rebut this presumption with evidence that was "so clear, direct, weighty, and convincing…." (*Id.* at 15) (quoting *Estate of Wilner, supra* at 293, 142 A.3d at 806).

The court acknowledged the validity of Appellants' arguments, stating it was not unreasonable that "the decedent did not revoke his 2013 will, but rather [it] was simply lost and/or misplaced stemming from [Decedent's] itinerant lifestyle…." (*Id.*) Nevertheless, the court could not ignore the evidence that Decedent "was a proficient and well-versed estates

_____

seventeen (17) pages and includes the opinion in support of the court's conclusions.

practitioner." (*Id.*) Ultimately, the evidence regarding Decedent's legal acumen undermined Appellants' attempt to rebut the presumption that the 2013 was revoked or destroyed:

> [Decedent] being an attorney with estates practice experience certainly would … have known the importance of preserving ready access to an original testamentary instrument. While his nomadic residential lifestyle did not readily lend itself to the maintaining of each and every important personal document for which there was no other such record repository, [Decedent] had a group of caring friends, including a lawyer, any of whom would have at his request kept protected the original will, yet the decedent neither made known to most of these close friends the will's existence nor gave to any of them for safekeeping the original, 2013 testamentary instrument.

(*Id.*) (internal citations omitted). Based upon our independent review of the record in the light most favorable to Appellee, the court's findings are supported by competent evidence, and the court did not commit an error of law or abuse of discretion. *See Estate of Maddi, supra*.

Contrary to Appellants' argument, the court did not misapply the applicable standard of proof set forth in **Estate of Wilner**. Rather, the court correctly identified that Appellants needed to present "clear" evidence to rebut the presumption that Decedent destroyed or revoked the 2013 will. *See id.* While Appellants attempted to prove their case by relying on evidence of Decedent's contrasting relationships with Ms. Gitterman and Ms. Reinish, the court properly recognized that "[d]eclarations of intent, condition, and circumstances of family" were, by themselves, insufficient to rebut the presumption. *Id. See also Estate of Janosky, supra* (holding Orphans'

Court did not err in finding that evidence did not satisfactorily rebut presumption needed for will to have been admitted to probate; appellant did not have evidence, other than relationships of parties, to substantiate claim regarding whether will had been lost or destroyed by someone other than decedent).

Moreover, the instant case is distinguishable from *Estate of Wilner*, which dealt with a scenario where the court found sufficient proof to rebut the presumption that the testator had destroyed her will. *See Estate of Wilner, supra* at 282, 142 A.3d at 799. In *Estate of Wilner*, such proof included testimony from the attorney who drafted the original will and codicil at issue. On appeal thereafter, our appellate courts addressed whether the "two-witness rule" applied to a will's contents, as opposed to its execution. Regarding the Court's statement that "the terms of a lost will be established in any lawful manner by clear and convincing evidence," our review of the record does not reveal that the Orphans' Court ran afoul of this mandate. *Id.* at 293, 142 A.3d at 806. Accordingly, we affirm the decree granting Appellee's petition for citation sur appeal.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/12/2021