J-A26043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF SARAH S. HOLLINGSWORTH, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THOMAS F. HOLLINGSWORTH | : | No. 575 EDA 2023 |

Appeal from the Decree Entered September 14, 2022
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): 414AP 2021

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED FEBRUARY 21, 2024**

Appellant, Thomas F. Hollingsworth, appeals from the decree entered in the Philadelphia County Court of Common Pleas, Orphans' Court, which denied Appellant's petition for citation to show cause as to why his appeal from probate should not be sustained. We affirm.

The relevant facts of this appeal are as follows.

> Sarah Hollingsworth [("Decedent")] died on January 2, 2019, and was survived by six children including [Appellant] and [Appellee], Donna M. Tygh. On February 18, 2020, the Philadelphia register of wills admitted to probate a writing dated June 1, 2007, as the last will and testament of [Decedent]. In so doing, the register granted letters testamentary to [Appellee]. More than a year later, [Appellant] filed a petition on April 20, 2021, seeking a citation directed at [Appellee] to show cause why his appeal from the register should not be sustained. On July 8, 2021, [the Orphans'] Court found the petition untimely and as such three of the four claims raised therein were dismissed, with the sole allegation of forgery and fraud surviving the time bar. …

On July 28, 2021, [Appellant], with leave of court, filed an amended petition, pleading with particularity that the writing admitted to probate as the last will of [Decedent] was the product of forgery and fraud. Specifically, the amended petition alleged:

> 1.     The handwriting on [Decedent's] will is the writing of [Appellee].
>
> 2.     The signature on the will of [Decedent] does not match previously signed mortgage and retirement account documents.
>
> 3.     A writing, purporting to be a will was shown to [Appellant] and his siblings in 2007, outlining a different distribution scheme.
>
> 4.     The probated will contains pages prepared by [Appellee] as replacement pages of Decedent's actual will.
>
> 5.     The first page of the probated will misspells [D]ecedent's first name, incorrectly using "Sara" instead of "Sarah."
>
> 6.     No provision for the purposeful exclusion of five of [D]ecedent's six children.
>
> 7.     Page (I-7) is a typed reiteration of a handwritten clause on page (I-4).

(Orphans' Court Opinion, filed 9/14/22, at 1-2) (some capitalization omitted).

On August 24, 2022, the Orphans' Court conducted a hearing on the matter. Initially, Appellee presented testimony from her husband, Edward Tygh. Mr. Tygh testified that he assisted Decedent with drafting the will in 2007, "approximately 12 years before she passed away." (N.T. Hearing, 8/24/22, at 10). Specifically, Mr. Tygh "wrote the entire will for her word-for-

word as she instructed me to do." (*Id.* at 9). Thereafter, Decedent took the will to be notarized. Mr. Tygh explained that Decedent subsequently stored the will in a safe in Appellee and Mr. Tygh's house. On cross-examination, Appellant's attorney asked Mr. Tygh whether Decedent provided a reason why the 2007 will disinherited five of Decedent's six children. Mr. Tygh responded, "I don't know why she excluded anyone, but she positively asked me to write the will…." (*Id.* at 25).

Thereafter, Appellant presented testimony from two of his siblings, Sandra Pinketti and Jennifer Hollingsworth, to establish that the 2007 will provided a distribution scheme that was inconsistent with Decedent's wishes. Appellant also testified, claiming that the "printing" on the 2007 will matched Appellee's handwriting rather than that of Mr. Tygh. (*Id.* at 107). At the conclusion of the hearing, the court took the matter under advisement. (*See id.* at 114). By opinion and decree entered September 14, 2022, the court denied Appellant's petition and concluded that Appellant had failed to present sufficient evidence to establish fraud or forgery.

Appellant filed a motion for reconsideration on September 26, 2022. Before the court ruled on his motion, Appellant timely filed a notice of appeal on October 11, 2022. On October 12, 2022, the court denied Appellant's motion for reconsideration and ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed a Rule 1925(b) statement on October 31, 2022.

Appellant now raises two issues on appeal:

> Did the court err by failing to give sufficient weight to exhibits P-2 and P-6 and the testimony of the witnesses regarding provisions about jewelry contained in the actual last will and testament of [D]ecedent that they either viewed or heard the provisions read?

> Did the court err by not declaring the altered document submitted to the register of wills invalid?

(Appellant's Brief at 4).

Appellant's issues are related, and we address them together. Appellant contends that he presented evidence to establish that "two pages of the purported last will and testament of [D]ecedent submitted to the register of wills were altered and fraudulent." (*Id.* at 8). Appellant insists that the "testimony of the witnesses and the printing samples," which he entered as exhibits at the hearing, "provided clear and convincing evidence" of the fraud perpetrated by Appellee. (*Id.* at 9). Appellant maintains that Appellee's handwriting matches the writing on the 2007 will. Additionally, Appellant complains that the court did not properly consider his witnesses' testimony regarding certain provisions in the 2007 will that did match Decedent's intent. Appellant concludes that the Orphans' Court improperly denied his request for relief. We disagree.

Our scope and standard of review on appeal from a decree of the Orphans' Court adjudicating an appeal from probate is as follows:

> The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally

competent and sufficient evidence and whether there is an error of law or abuse of discretion. Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

*Estate of Maddi*, 167 A.3d 818, 822 (Pa.Super. 2017), *appeal denied*, 644 Pa. 655, 178 A.3d 107 (2018) (quoting *Estate of Nalaschi*, 90 A.3d 8, 11 (Pa.Super. 2014)).

"Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of discretion." *In re Estate of Cruciani*, 986 A.2d 853, 855 (Pa.Super. 2009) (quoting *In re Estate of Presutti*, 783 A.2d 803, 805 (Pa.Super. 2001)).

Also, the party alleging forgery has the burden of proving the existence of the forged document by clear, direct, precise, and convincing evidence. Further, we observe that because forgery presents an issue of fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility. Lastly, with regard to the testimony of a handwriting expert, we have held that where the testimony is corroborated by probative facts and circumstances surrounding the will such may overcome the testimony of the subscribing witnesses.

*Id.* (internal citations omitted). *See also In re Estate of Luongo*, 823 A.2d 942, 967 (Pa.Super. 2003), *appeal denied*, 577 Pa. 722, 847 A.2d 1287 (2003) (stating "contestant asserting fraud or forgery [of a will] has the burden of proving the facts upon which the alleged fraud or forgery is based," and "mere suspicion and conjecture cannot take the place of evidence").

Instantly, the Orphans' Court provided the following analysis of the

evidence presented at the hearing:

> [Appellee], the proponent of the will, shouldering the initial *prima facie* burden, established the facts of probate by introducing credible testimony from her husband, the scrivener of the will, sufficient to establish the will's execution. The testimony established that the will was printed on or about January 1, 2007, at the request of [D]ecedent on a form obtained from Staples. Decedent, shortly thereafter, brought the will to a notary where [D]ecedent's signature was notarized on the will. Decedent's will remained in a safe at [Appellee's] home until it was probated in February 2020.
>
> [Appellant], through cross-examination, sought to prove that [D]ecedent's signature was a forgery by showing that the will identified [D]ecedent as "Sara" and not her given name, "Sarah," and argued that [D]ecedent would not have signed such a document. This was refuted by [Appellee], who offered two identification cards, a Pennsylvania driver's license and a Medicare ID card, issued in or about 2009, both of which identified [D]ecedent as Sara but both of which she signed as Sarah. And, thus it was clear that [D]ecedent identified herself with either spelling of her name.
>
> \*   \*   \*
>
> With regards to the second claim, [Appellant] testified and called two of his sisters in support of the argument that pages of the original will were substituted by [Appellee]. [Appellant] introduced the testimony of Sandra Pinketti and Jennifer Hollingsworth, two of the five disinherited siblings. The [Orphans'] Court found their testimony concerning the alleged contents of the original will imprecise and neither clear nor convincing. Ms. Pinketti, when questioned by the [Orphans'] Court, stated: "And, you didn't see the contents of either document (referencing the will and the version with the substituted pages)." Witness: "No, I did not." Ms. Hollingsworth also testified that she did not see the two documents: "I only saw the front." Finally, [Appellant's] testimony simply did not focus on the documents he claimed he saw, and there was no testimony clearly identifying two separate documents or when he saw them. His testimony

> was that Decedent's signature on the will "…looks like [Appellee's] handwriting," but as we know this is factually incorrect from [Mr. Tygh's] testimony concerning the notary.

(Orphans' Court Opinion at 4-5) (internal record citations omitted).

Our review confirms that the record evidence supported the court's conclusions. *See Estate of Maddi, supra*. In addition to the preceding analysis, the court noted that Appellant did not present testimony from a handwriting expert. (*See* Orphans' Court Opinion at 5; N.T. Hearing at 53). The absence of expert testimony hampered Appellant's ability to establish that Appellee prepared some portion of the 2007 will. *See Estate of Cruciani, supra*. The court also acknowledged that "it is difficult to accept the result, *i.e.* that [Decedent] would disinherit five of her six children without explanation," but the court reached its decision "based on the lack of clear and convincing testimony and evidence to the contrary." (Orphans' Court Opinion at 6). On this record, we cannot say that the court abused its discretion in reaching its credibility determinations. *See In re Estate of Cruciani, supra*. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/21/2024